IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BETH BREWER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 03-PT-0559-M |
| ) | |
| CONTINENTAL CASUALTY ) | |
| COMPANY; TOM MCLEOD ) | |
| SOFTWARE CORPORATION GROUP ) | |
| DISABILITY PLAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon cross-motions for summary judgment. Defendants Continental Casualty Company ("Continental") and Tom McLeod Software Corporation Group Disability Plan ("the Plan") filed their motion on June 27, 2003 (Doc. 15). Plaintiff Beth Brewer ("Brewer") filed her motion on June 30, 2003 (Doc. 16).

### FACTS AND PROCEDURAL HISTORY

Brewer worked for the Tom McLeod Software Corporation. Brewer was covered under the Plan, which was a group long term disability contract of insurance. According to Continental, it is the insurer, and it alone determines eligibility and benefits under the terms of the Plan. *See* Def. Ex. 1 at ¶ 2. Tom McLeod Software Corporation has no input in the decision-making process and it does not bear the risk of loss under the Plan. Continental bears all the risk under the Plan. *See* Def. Ex. 2 at ¶ 4.

The Plan defines Total Disability as follows:

"Disability" means that during the Elimination Period [90 days] and the following 24 months, Injury or Sickness causes physical or mental impairment to such a

degree of severity that You are:

(1) continuously unable to perform the Material and Substantial duties of Your Regular Occupation; and

(2) not working for wages in any occupation for which You are or become qualified for by education, training or experience.

*See* Def. Ex. 1 at ¶ 3.[1] Here, the Elimination Period began on April 11, 2001 and ended on July 9, 2001. The Own Occupation period began on July 10, 2001 and would have run until July 10, 2003. After this period, Brewer would have been required to show that she was unable to engage in any occupation. *See* Def. Ex. 1 at ¶ 5.

On May 21, 2001, Brewer submitted an application for long term disability benefits based on an alleged total disability due to a back condition. Brewer has undergone surgery for lumbar laminectomy, bilateral fasciectomies, complete decompressive discectomy, posterior lumbar interbody fusion, and Ray cages in her lumbar spine. Brewer contends that she suffers from intractable lumbar and thoracic pain, as well as left lower extremity radiculopathy which has failed to respond to invasive interventions. Along with the application, Brewer submitted the Employer's Statement, Employee's Statement, Physician's Statement, and various other medical records. *See* Claim File at 180-205.[2] Included in the medical records were portions of the records of Brewer's neurosurgeon, Terry M. Andrade, M.D. The Employer's Statement indicated the Brewer's job "Requires the ability to input, review and modify data on computer screens. Requires sitting at a PC terminal, inputting data to PC, some phone calls." *See* Claim

---

[1]This is the "Own Occupation" portion of the Plan. After 24 months, the definition of disability changes to what is called the "Any Occupation" definition. Apparently, Brewer's benefits were terminated before the Own Occupation period ended.

[2]The Claim File is attached as Exhibit B to Defendant's Exhibit 1.

2

File at 181. There was also an attached job description for her position, Support Accounts Manager. *Id.* at 182.

On July 2, 2001, Brewer sent additional information to Continental. *See* Claim File at 148-57. According to Continental, this submission included a three page letter outlining her personal views on the claim, and notes summarizing various tests and procedures performed on her. On July 9, 2001, Brewer submitted the first page of a report prepared by Dr. Kenneth Varley summarizing the surgical treatment afforded to Brewer on June 15, 2001. *Id.* at 144-45. On July 23, 2001, Brewer forwarded a complete physician's statement prepared by Dr. Varley. *Id.* at 135-37. Brewer also submitted various other office notes and reports prepared by her physicians in support of her claim. *Id.* at 108-33.

Based on the information submitted, Continental began paying benefits to Brewer on July 10, 2001. On July 19, 2001, Continental made the decision to contact Dr. Andrade, purportedly to clarify some discrepancies between Brewer's claims of pain, etc. and the records submitted by Dr. Andrade. *See* Claim File at 98-99. According to Continental, Dr. Andrade stated that Brewer's primary problem is narcotic addiction. *Id.* at 93. Dr. Andrade further stated that Brewer "is taking the pain beyond reason." *Id.* Dr. Andrade advised Continental that Brewer would be able to return to work on August 13, 2001. *Id.* On or around July 20, 2001, Dr. Varley issued another Physician's Statement stating that he was unable to determine a return to work date at that time. *See* Pl. Ex. B.

By letter dated August 14, 2001, Continental informed Brewer that her benefits would be discontinued based on information obtained from one of her treating physicians that she was capable of performing the material and substantial duties of her regular occupation. *See* Claim

3

File at 105-07. The letter informed Brewer of the conversation that Continental had with Dr. Andrade, and of her right to appeal and submit additional information. *Id. See also* Def. Br. at 8-9. On the same day Continental sent a letter to Brewer's former employer advising it of the decision to discontinue benefits. *See* Claim File at 104; Def. Br. at 9-10.

On September 13, 2001, Brewer sent a request for reconsideration of the decision, explaining her condition and why Dr. Andrade's opinion was incorrect. *See* Claim File at 69-74. On September 14, 2001, Continental received additional correspondence from Brewer again requesting reconsideration and providing further medical information regarding her condition. *Id.* at 85. On or around September 25, 2001, Brewer's other treating physician, orthopedic specialist Alex Mompoint, M.D., submitted a response to Continental's functional assessment request. *See* Pl. Ex. C. Dr. Mompoint stated that Brewer was currently unable to perform the duties of her job. *Id.* Continental's internal Claim Activity report indicates that it received the evaluation of Dr. Mompoint. *See* Pl. Ex. E. On September 26, 2001, Continental sent a letter confirming that the claim had been appealed, and advising Brewer about some of the details of the review process. *See* Claim File at 61-63.

On September 27, 2001, Continental sent Brewer a letter indicating that the additional information submitted by her, consisting in part of additional medical reports from a Dr. Potnis, did not indicate that she would be unable to perform the material and substantial duties of her job. *See* Claim File at 58. The letter informed Brewer again that her benefits would be discontinued as of August 12, 2001. The letter also stated that her claim file would be forwarded to the Appeals Committee for a formal review. *Id.* Brewer notes that the Disability Specialist was not a licensed medical doctor, and that apparently he spent only 15 minutes reviewing the

4

file. *See* Pl. Ex. E.

The Appeals Committee, after conducting their review, determined that a final decision could not be made at that time and that additional information was needed. *See* Claim File at 46. On October 26, 2001, Continental sent Brewer a letter, informing her that her physicians and employer would be contacted for additional information, and that her file would be sent back to the Disability Specialist for the initial review after the additional information was received. *Id.* On November 3, 2001, Continental sent a Physical Demands Analysis ("PDA") to Brewer's former employer in order to obtain information about her position. *Id.* at 42-44. On November 8, 2001, Brewer's employer returned the PDA. *Id.* at 37-38. The PDA indicated that Brewer's occupation only requires 30 minutes of standing and walking at one time and four hours of sitting. *Id.* It also indicated that she would be allowed to alternate between sitting and standing as needed. *Id.* On November 8, 2001, Brewer apparently re-submitted the July 20 statement from Dr. Varley indicating that she is required to alternate between sitting and standing every 15 minutes and is unable to lift more than 20 pounds. *Id.* at 34. Continental contends that these restrictions are feasible under the PDA. On or around November 7, 2001, Dr. Varley also sent a letter to Continental indication that Brewer was unable to return to work. *See* Pl. Ex. D.

On November 13, 2001, the Disability Specialist sent a letter to Brewer, informing her that, even with the new information that was submitted, her benefits would be terminated. *See* Claim File at 26-27. Brewer's claim file was sent back to the Appeals Committee for another review. The Appeals Committee upheld the termination of benefits, informing Brewer via letter on November 15, 2001. *Id.* at 22-23. The Appeals Committee acknowledged that Brewer's physicians stated that she was unable to work. However, according to the Appeals Committee,

5

the physicians had not submitted evidence to support this assessment. Brewer was informed that the appeals process was over and that the decision was final. *Id.*

Brewer filed this lawsuit on March 12, 2003. Her complaint, brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), seeks the recovery of past benefits under 29 U.S.C. § 1132(a)(1)(B). She also seeks future benefits, attorney's fees, interest, and costs. *See* Pl. Br. at 17-18.

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265

F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

### I. Defendant's Position

Continental contends that the Plan contains deferential *Firestone*[3] language, and thus its decision is governed by the arbitrary and capricious standard. *See Lee v. Blue Cross & Blue Shield of Ala.*, 10 F.3d 1547, 1550 (11th Cir. 1994)(plan with similar language). Under this standard, Continental contends, its decision cannot be disturbed if reasonable, *Firestone*, 489 U.S. at 111, and this court is limited to "deciding whether [Continental's] interpretation of the plan was made rationally and in good faith." *Cagle v. Bruner*, 112 F.3d 1510, 1518 (11th Cir. 1997).

---

[3] A district court's review of an ERISA plan's denial of benefits under § 502(a)(1)(B) is to be reviewed *de novo*, unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court reviews whether the decision maker acted in an arbitrary or capricious manner. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Consistent with *Firestone*, the Eleventh Circuit has adopted three standards of review under § 502(a)(1)(B): (1) *de novo*, applicable where the plan administrator has no discretion, (2) arbitrary and capricious (abuse of discretion), where the plan grants discretion to the administrator, and (3) heightened arbitrary and capricious, where the plan grants discretion but the administrator is acting under a conflict of interest. *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1449 (11th Cir. 1997). These standards of review apply to both the administrator's construction of the plan and the factual findings associated with each individual case. *Paramore*, 129 F.3d at 1451.

7

However, Continental later concedes that this case is governed by the heightened arbitrary and capricious standard because it operated under a conflict of interest. *See* Def. Br. at 20. Under this standard, Continental asserts, the first step is to conduct a *de novo* review to determine whether the benefits decision was correct or incorrect. *See, e.g., Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir. 2001)("It is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of a *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary."). *See also* Def. Br. at 20-21 (other cases). Only if the decision was "wrong" does a court concern itself with the administrator's conflict of interest. Here, Continental argues, the decision was not wrong and summary judgment is due to be granted.

Continental contends that a court's review begins with an interpretation of the plain language of the plan. *See Firestone*, 489 U.S. at 114. Here, Continental interprets the own occupation definition of "total disability" as follows: a claimant must show that she is (1) continuously unable to perform the material and substantial duties of her occupation; and (2) not working for wages in any occupation for which she is or becomes qualified by education, training or experience. *See* Def. Br. at 22. Continental contends that this interpretation is obviously correct.

As to the evidence of disability submitted by Brewer, Continental does not dispute that Brewer has a medical condition involving her back. Rather, the evidence simply does not demonstrate that she is unable to engage in her occupation due to these back problems. As noted above, Dr. Varley's assessment, that she would have to alternate sitting and standing and that she could not lift more than 20 pounds, is completely consistent with the PDA submitted by her

8

employer. *See* Claim File at 37-38. In addition, Dr. Andrade clearly stated that Brewer would be able to return to work on August 13, 2001. *Id.* at 93. While Brewer has stopped seeing Dr. Andrade because of his "extreme lack of pain control," *see* Claim File at 70, the fact remains that Dr. Andrade has evaluated Brewer and has stated that she can return to work. Continental paid benefits until August 12, 2001, and it is clearly not required to do so after that date.

**II. Plaintiff's Response**

In support of her motion[4], Brewer first argues that the facts of this case are very similar to those in *Levinson*. In *Levinson*, the court, in holding that the claims administrator acted arbitrarily and capriciously, stated that

> To support his initial claim, Levinson submitted an APS [a physician statement] from Dr. Azar stating that he was totally disabled. Levinson was under the care of a physician, and there is no dispute that he completed the elimination period. Reliance also had access to Levinson's medical records that detailed his heart condition. At the time Reliance made the decision on Levinson's claim, it appears that the only facts known to it were based on Dr. Azar's APS, Levinson's medical records, and Levinson's status as a full time employee at the law firm. Reliance's decision on Levinson's appeal involved a review of the same facts as its first decision, as well as: (1) Dr. Azar's letter of January 1996 which stated Levinson could not perform the material duties of his occupation on a full-time basis; and, (2) office attendance records showing that between Levinson's initial appointment with Dr. Azar and the date of his termination Levinson had taken two sick days, left early for a doctor's appointment one day, and had taken 11 ½ vacation days. It appears, therefore, that Reliance relied on the nurse's review and the opinion of its claim person that Levinson was asymptomatic and not disabled, and not upon any independent medical evidence to conclude that Levinson did not meet the definition of disabled. Furthermore, Reliance's assertion that Levinson was asymptomatic does not appear to be a reason for denying benefits anywhere in the language of the policy.
>
> We find that Reliance's decisions on Levinson's claims were wrong from a perspective of *de novo* review, and its self-interest in this case requires that we determine whether the claims decisions were arbitrary and capricious. It does not

---

[4]Brewer also filed a response to Continental's motion, making essentially the same arguments. *See* Doc. 20.

> appear that there was a reasonable basis for Reliance's decisions, based on the evidence known to Reliance at the time it made the decisions. Aside from the report from his law firm indicating that Levinson was a full- time employee, there did not appear to be any evidence before Reliance that contradicted Levinson's evidence from his physician that he was totally disabled under the terms of the plan. Therefore, the district court was correct in holding the claim decision was arbitrary and capricious.

245 F.3d at 1326-27 (footnotes omitted). The same thing, Brewer contends. happened here. Continental's claims personnel disregarded the medical evidence submitted by Brewer and made a decision that was not based on any evidence from the medical doctors.

Brewer also notes that Continental is operating under a conflict of interest, a fact which, as noted above, Continental has conceded. According to Brewer, under the heightened arbitrary and capricious standard, once a plaintiff shows that the decision was wrong the burden shifts to the defendant to show that the decision was not tainted by self-interest. *See, e.g., HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 994-95 (11th Cir. 2001). However, "[e]ven when the administrator satisfies this burden, the claimant may still be successful if he can show by other measures that the administrator's decision was arbitrary and capricious." *Id.* at 995. For example, "[i]f the court finds that the claims administrator fails to show that its plan interpretation benefits the class of participants and beneficiaries, the claims administrator's plan interpretation is not entitled to deference." *Id.* Brewer also notes that in a heightened arbitrary and capricious case the proper amount of deference owed to an administrator's decision "might be slight or even zero." *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1564 (11th Cir. 1990).

Brewer also notes that Continental has admitted that it is a fiduciary under ERISA. *See* Answer at ¶ 22. *See also* 29 U.S.C. § 1002(21)(A) (defining fiduciary). Fiduciaries under

ERISA are required to meet the "prudent person" standard. Specifically, the statute states in relevant part that

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

29 U.S.C. § 1104. Brewer asserts that Continental and the Plan have breached these fiduciary duties by acting in an arbitrary and capricious manner with respect to her claim for benefits.

Brewer also contends that Continental has breached its fiduciary duty with respect to the appeals process. The relevant statute states that

> In accordance with regulations of the Secretary, every employee benefit plan shall--
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The regulations promulgated by the Department of Labor in connection with this statute provide, in part, that

> . . . [T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. . . . The notification shall set

11

>   forth, in a manner calculated to be understood by the claimant–
>
>   (i) The specific reason or reasons for the adverse determination;
>
>   (ii) Reference to the specific plan provisions on which the determination is based;
>
>   <u>(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;</u> . . .

29 C.F.R. § 2560.503-1(g)(1) (emphasis added). Here, Brewer contends, Continental did not comply with these regulations. Brewer contends that the September 27, 2001 letter stated that her appeal was "denied" before it had even been reviewed by the Appeals Committee. *See* Claim File at 58. It also failed to advise Brewer of what information, if any, would be necessary to support her claim. Continental also failed to explain why it needed evidence of "spinal instability," when such medical information was considered irrelevant by her treating physicians.

Brewer cites *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685 (7th Cir. 1992), in which the court stated that

>   These requirements insure that when a claimant appeals a denial to the plan administrator, he will be able to address the determinative issues and have a fair chance to present his case. As we noted in *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 392 (7th Cir. 1983), "[d]escribing additional information needed and explaining its relevance, as required by subsection (3) of 29 C.F.R. § 2560.503-1, enables a participant both to appreciate the fatal inadequacy of his claim as it stands and to gain a meaningful review by knowing with what to supplement the record."

962 F.2d at 689. Here, Brewer contends, the appeals process kept her running in circles. As an example, she cites the November 15, 2001 letter which stated that there were no findings confirming her doctors' opinions about her work ability. *See* Pl. Ex. G. She notes that Dr. Varley's November 7, 2001 letter contains the objective medical findings that Continental was

12

supposedly lacking. *See* Pl. Ex. D. Without reason, Continental's claims personnel simply disregarded this information and found that Brewer did not meet the definition found in the policy.[5]

### III. Defendant's Reply

Continental counters by noting that it did rely on information submitted from doctors, specifically Brewer's own doctor, Dr. Andrade. Dr. Varley's assessment was also consistent with the PDA provided by Brewer's employer. In light of this evidence, Continental argues, its decision was correct and, as noted above, the court does not even need to reach the issue of a conflict of interest.

Continental also notes that this court has already dismissed any breach of fiduciary claims against the defendants. Thus, the arguments submitted by Brewer with respect to fiduciary duties should be ignored. Also, assuming that the arguments are proper, it is clear that Continental complied with the cited statutes and regulations, specifically with respect to notice and appeal. Continental points to its initial denial letter to demonstrate that it has complied with the applicable regulations. *See* Claim File at 105-06; *see also* Def. Response Br. at 7-9.

### IV. Plaintiff's Reply

Brewer again argues that Continental simply ignored the disability diagnoses of Dr. Mompoint and Dr. Varley. Continental selectively chose the parts of Dr. Varley's statement that it contends support its position, while ignoring his specific statement that he was unable to determine when Brewer would be able to return to work. And the opinion of Dr. Mompoint was

---

[5]Brewer also offers a calculation of the past and future benefits owed to her, as well as an argument that she is entitled to costs and attorney's fees. *See* Pl. Br. at 17-18. Continental argues that Brewer is entitled to neither costs nor attorney's fees. *See* Def. Response at 9-11.

provided on the very form supplied by Continental. These statements from these two doctors constitute objective medical findings, even though Continental later stated that Brewer had supplied no findings to support her claim. The statements, coupled with Continental's conflict of interest, clearly show that its decision was arbitrary and capricious.

Brewer also asserts that Continental has misconstrued her citations to the fiduciary duty provisions of ERISA. Brewer states that she is not making a state-law claim for breach of fiduciary duty. Rather, she cites these statutes in order to show that the defendants were charged with certain duties when they undertook to review her claim. She further asserts that they have breached these duties by failing to reasonably review her medical evidence and the statements from her doctors. Apparently, she seeks to have this court use these breaches as factors in its analysis of the case.

## CONCLUSIONS OF THE COURT

The court will deny both motions. A trial is necessary at least on the threshold issue of whether the decision denying benefits was wrong.

This 31st day of July, 2003.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

14