FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

03 NOV 17 PM 2:57

U.S. DISTRICT COURT
N.D. OF ALABAMA

BETH BREWER,                )
                            )
    Plaintiff,              )
                            )
v.                          )   Civil Action No.: 03-PT-0559-M
                            )
CONTINENTAL CASUALTY        )
COMPANY; TOM MCLEOD         )
SOFTWARE CORPORATION GROUP  )
DISABILITY PLAN,            )
                            )
    Defendants.             )

ENTERED
NOV 17 2003

## MEMORANDUM OPINION

This cause comes to be heard upon defendants Continental Casualty Company's ("Continental") and Tom McLeod Software Corporation Group Disability Plan's ("the Plan") Objections to Plaintiff's Witnesses, Exhibits and Itemization of Requested Relief, filed on October 23, 2003.

### FACTS[1] AND PROCEDURAL HISTORY

Brewer worked for the Tom McLeod Software Corporation. Brewer was covered under the Plan, which was a group long term disability contract of insurance. Continental is the insurer, and it alone determines eligibility and benefits under the terms of the Plan. *See* MSJ Def. Ex. 1 at ¶ 2. Tom McLeod Software Corporation has no input in the decision-making process and it does not bear the risk of loss under the Plan. Continental bears all the risk under the Plan. *See* MSJ Def. Ex. 2 at ¶ 4.

The Plan defines Total Disability as follows:

34

> "Disability" means that during the Elimination Period [90 days] and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
>
> (1) continuously unable to perform the Material and Substantial duties of Your Regular Occupation; and
>
> (2) not working for wages in any occupation for which You are or become qualified for by education, training or experience.

*See* MSJ Def. Ex. 1 at ¶ 3.[2] Here, the Elimination Period began on April 11, 2001 and ended on July 9, 2001. The Own Occupation period began on July 10, 2001 and would have run until July 10, 2003. After this period, Brewer would have been required to show that she was unable to engage in any occupation. *See* MSJ Def. Ex. 1 at ¶ 5.

On May 21, 2001, Brewer submitted an application for long term disability benefits based on an alleged total disability due to a back condition. Brewer has undergone surgery for lumbar laminectomy, bilateral fasciectomies, complete decompressive discectomy, posterior lumbar interbody fusion, and Ray cages in her lumbar spine. Brewer contends that she suffers from intractable lumbar and thoracic pain, as well as left lower extremity radiculopathy which has failed to respond to invasive interventions. Along with the application, Brewer submitted the Employer's Statement, Employee's Statement, Physician's Statement, and various other medical records. *See* Claim File at 180-205.[3] Included in the medical records were portions of the records of Brewer's neurosurgeon, Terry M. Andrade, M.D. The Employer's Statement indicated that Brewer's job "Requires the ability to input, review and modify data on computer screens. Requires sitting at a PC terminal, inputting data to PC, some phone calls." *See* Claim File at 181. There was also an attached job description for her position, Support Accounts Manager. *Id.* at 182.

On July 2, 2001, Brewer sent additional information to Continental. *See* Claim File at 148-57. According to Continental, this submission included a three page letter outlining her personal views on the claim, and notes summarizing various tests and procedures performed on her. On July 9, 2001, Brewer submitted the first page of a report prepared by Dr. Kenneth Varley summarizing the surgical treatment afforded to Brewer on June 15, 2001. *Id.* at 144-45. On July 23, 2001, Brewer forwarded a complete physician's statement prepared by Dr. Varley. *Id.* at 135-37. Brewer also submitted various other office notes and reports prepared by her physicians in support of her claim. *Id.* at 108-33.

Based on the information submitted, Continental began paying benefits to Brewer on July 10, 2001. On July 19, 2001, Continental made the decision to contact Dr. Andrade, purportedly to clarify some discrepancies between Brewer's claims of pain, etc., and the records submitted by Dr. Andrade. *See* Claim File at 98-99. According to Continental, Dr. Andrade stated that Brewer's primary problem is narcotic addiction. *Id.* at 93. Dr. Andrade further stated that Brewer "is taking the pain beyond reason." *Id.* Dr. Andrade advised Continental that Brewer would be able to return to work on August 13, 2001. *Id.* On or around July 20, 2001, Dr. Varley issued another Physician's Statement stating that he was unable to determine a return to work date at that time. *See* Pl. Ex. B.

By letter dated August 14, 2001, Continental informed Brewer that her benefits would be discontinued based on information obtained from one of her treating physicians that she was capable of performing the material and substantial duties of her regular occupation. *See* Claim File at 105-07. The letter informed Brewer of the conversation that Continental had with Dr. Andrade, and of her right to appeal and submit additional information. *Id. See also* MSJ Def.

Br. at 8-9. On the same day Continental sent a letter to Brewer's former employer advising it of the decision to discontinue benefits. *See* Claim File at 104; MSJ Def. Br. at 9-10.

On September 13, 2001, Brewer sent a request for reconsideration of the decision, explaining her condition and why Dr. Andrade's opinion was incorrect. *See* Claim File at 69-74. On September 14, 2001, Continental received additional correspondence from Brewer again requesting reconsideration and providing further medical information regarding her condition. *Id.* at 85. On or around September 25, 2001, Brewer's other treating physician, orthopedic specialist Alex Mompoint, M.D., submitted a response to Continental's functional assessment request. *See* Pl. Ex. C. Dr. Mompoint stated that Brewer was currently unable to perform the duties of her job. *Id.* Continental's internal Claim Activity report indicates that it received the evaluation of Dr. Mompoint. *See* Pl. Ex. E. On September 26, 2001, Continental sent a letter confirming that the claim had been appealed and advising Brewer about some of the details of the review process. *See* Claim File at 61-63.

On September 27, 2001, Continental sent Brewer a letter indicating that the additional information submitted by her, consisting in part of additional medical reports from a Dr. Potnis, did not indicate that she would be unable to perform the material and substantial duties of her job. *See* Claim File at 58. The letter informed Brewer again that her benefits would be discontinued as of August 12, 2001. The letter also stated that her claim file would be forwarded to the Appeals Committee for a formal review. *Id.* Brewer notes that the Disability Specialist was not a licensed medical doctor, and that apparently he spent only 15 minutes reviewing the file. *See* Pl. Ex. E.

The Appeals Committee, after conducting its review, determined that a final decision

could not be made at that time and that additional information was needed. *See* Claim File at 46. On October 26, 2001, Continental sent Brewer a letter, informing her that her physicians and employer would be contacted for additional information, and that her file would be sent back to the Disability Specialist for the initial review after the additional information was received. *Id.* On November 3, 2001, Continental sent a Physical Demands Analysis ("PDA") to Brewer's former employer in order to obtain information about her position. *Id.* at 42-44. On November 8, 2001, Brewer's employer returned the PDA. *Id.* at 37-38. The PDA indicated that Brewer's occupation only requires 30 minutes of standing and walking at one time and four hours of sitting. *Id.* It also indicated that she would be allowed to alternate between sitting and standing as needed. *Id.* On November 8, 2001, Brewer apparently re-submitted the July 20 statement from Dr. Varley indicating that she is required to alternate between sitting and standing every 15 minutes and is unable to lift more than 20 pounds. *Id.* at 34. Continental contends that these restrictions are feasible under the PDA. On or around November 7, 2001, Dr. Varley also sent a letter to Continental indicating that Brewer was unable to return to work. *See* Pl. Ex. D.

On November 13, 2001, the Disability Specialist sent a letter to Brewer, informing her that, even with the newly submitted information, her benefits would be terminated. *See* Claim File at 26-27. Brewer's claim file was sent back to the Appeals Committee for another review. The Appeals Committee upheld the termination of benefits, informing Brewer via letter on November 15, 2001. *Id.* at 22-23. The Appeals Committee acknowledged that Brewer's physicians stated that she was unable to work. However, according to the Appeals Committee, the physicians had not submitted evidence to support this assessment. Brewer was informed that the appeals process was over and that the decision was final. *Id.*

Brewer filed this lawsuit on March 12, 2003. Her complaint, brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), seeks the recovery of past benefits under 29 U.S.C. § 1132(a)(1)(B). She also seeks future benefits, attorney's fees, interest, and costs. *See* Pl. Br. at 17-18. On July 31, 2003, this court denied the parties' cross-motions for summary judgment. On October 10, 2003, Brewer filed her witness and exhibit list, to which defendants now object.

## ARGUMENTS

### I.   Defendants' Objections

In reviewing defendants' decision to deny long-term disability benefits to Brewer, defendants contend, this court is limited to a review of materials before Continental at the time of its administrative decision (hereinafter referred to as "the Administrative Record.") Defendants object to the plaintiff's inclusion of certain witnesses and exhibits, asserting that certain testimony and exhibits are not admissible at trial because the evidence sought to be introduced relates to matters outside of the Administrative Record.

According to defendants, if the relevant plan document gives discretionary authority to the administrator to determine eligibility or to construe the terms of the plan, judicial review of the administrative decision is confined to evidence before the administrator. *See Jett v. Blue Cross and Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989)(citing *Brown v. Retirement Committee of Brigg & Stratton Retirement Plan*, 797 F.2d 521, 531 (7th Cir. 1986)(noting a federal court is to focus on the evidence before the administrator at the time of the final decision and is not to hold a *de novo* factual hearing)). Here, defendants point out, the Plan document gives Continental the authority to determine eligibility for benefits, to calculate

the amount of benefits, and to construe the terms of the plan.[4]

Defendants rely upon several Eleventh Circuit cases which allegedly hold similar plan language confers such discretionary authority. *See Lee v. Blue Cross and Blue Shield of Ala.*, 10 F.3d 1547, 1550 (11th Cir. 1994); *Jett v. Blue Cross and Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989); *Anderson v. Blue Cross and Blue Shield of Ala.*, 907 F.2d 1072, 1076 (finding discretionary authority where plan language gave administrator "the right to determine which services and supplies are medically necessary and, therefore, payable and to determine the amount to be paid as a 'reasonable and customary fee' to physicians performing a service to or a procedure on a member"). According to defendants, Continental's reasonable interpretation of relevant plan provisions may not be disturbed. *See Firestone*, 489 U.S. at 111; *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38-39 (11th Cir. 1989).

In *Jett*, defendants note, the Eleventh Circuit stated: "When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, <u>based upon the facts as known to the administrator at the time the decision was made</u>." *Jett*, 890 F.2d at 1139 (emphasis added)(citing *Brown*, 797 F.2d 531). *See also Buckley v. Metropolitan Life*, 115 F.3d 936 (11th Cir. 1997); *Anderson*, 907 F.2d at 1075-76. Defendants further quote *Jett*: "As long as a reasonable basis appears for [the administrator's] decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." *Jett* at 1140; *see also Brown v. Blue Cross and Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1564 (11th Cir. 1990)(determining that

denial of plan benefits by a disinterested plan fiduciary under the arbitrary and capricious standard can be reversed only if denial is completely unreasonable).

According to defendants, Brewer should not be able to call the following witnesses because their testimony was not before Continental at the time it made the denial-of-benefits decision: (1) the administrator and custodian of records for the Plan; (2) Charles Nizolek, Jr.; (3) Becky Thomas; (4) Ocie Brunson; (5) Dr. Kenneth Varley; (6) Dr. Alex Mompoint; and (7) Dr. Cem Cezayili. Defendants argue that the testimony of these individuals would relate to matters outside the Administrative Record. Furthermore, defendants assert, Brewer's exhibit list identifies several documents that may or may not be included within the Administrative Record. To the extent that certain documents are not within the Administrative Record, defendants object to introduction of these documents at trial for the above-stated reasons. Finally, defendants object to plaintiff's itemization of requested relief. Defendants request a court order preventing Brewer from offering the identified witnesses and exhibits.

## II.   Plaintiff's Reply

First, Brewer contends, Continental improperly relies on cases that do not involve the heightened arbitrary and capricious standard of review or disability insurance. Brewer points out that *Lee, Jett, and Anderson* all predate *Levinson v. Reliance Standard Life Insurance Co.*, 245 F.3d 1321, 1326-27 (11th Cir. 2001), which involves a disability insurance claim denial that Brewer asserts is similar to her case.[5]

Furthermore, Brewer argues, Continental also wrongly disputes the application of the heightened arbitrary and capricious standard of review.[6] Brewer relies on *Brown v. Blue Cross and Blue Shield of Alabama*'s explanation of possible conflicts of interests between fiduciary

duties and profit-making motives when a insurance company pays benefits from its own assets. *See Brown*, 898 F.2d at 1561. Contrary to defendants' argument, Brewer contends, the Eleventh Circuit "expressly rejected the notion that the trial court must blindly defer to the plan administrator's decision":

> [A] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflict of interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.
>
> . . . .
>
> We emphasize the central theme of our exposition: well-established common law principles of trusts teach that a fiduciary operating under a conflict of interest may be entitled to review by the arbitrary and capricious standard for its discretionary decisions as provided in the ERISA plan documents, but the degree of deference actually exercised in the application of the standards will be significantly diminished.

*Brown* at 1566-68.

Brewer asserts that the testimony of Continental employees identified in both the administrative record and her witness list may provide evidence relating to the claims decision process and potential conflict of interest in this case. *See Medford v. Metropolitan Life Ins. Co.*, 244 F. Supp. 2d 1120 (D. Nev. 2003)[7]; *Lasser v. Reliance Standard Life Ins. Co.*, 130 F. Sup. 2d 616 (D.N.J. 2001).[8] According to Brewer, the Eleventh Circuit mandates that once the plaintiff has shown a substantial conflict of interest on the fiduciary's part, the burden shifts to the defendant to prove that its interpretation which resulted in the denial was not tainted by self-interest. Even should defendants meet that burden, Brewer argues, she may still succeed if she can demonstrate by other measures that the administrator's decision was arbitrary and

capricious. If the court finds that the administrator fails to show that its plan interpretation benefits the class of participants and beneficiaries, Brewer argues, the interpretation is not entitled to deference. *See HCA Health Servs. of GA, Inc., v. Employers Health Ins. Co*, 240 F.3d 982, 994-95. Brewer further argues that no such evidence of a conflict of interest influencing the administrative decision would reasonably be contained in the Administrative Record. As such, Brewer asserts, "Defendants are required to prove that the conflict of interest did not influence the claims decision and Plaintiff is entitled to cross- examine the Defendants relating to the conflict of interest issues."

Brewer expresses agreement with defendants that medical evidence at trial should be limited to medical information submitted to Continental in the Administrative Record. Brewer argues: "Under [Continental's] arguments, even Defendants would be restricted in any attempt to produce new evidence that would attempt to add weight to its claims denials in the administrative record. If the Court is inclined to sustain [Continental's] objection, the Defendants would be precluded from any unreliable testimony from non-medical doctor employees that would dispute the diagnosis, opinions and records of Plaintiff's medical doctors." According to Brewer, the Administrative Record shows that Continental's review of Brewer's medical records was interpreted <u>only</u> by laypersons, not doctors. Thus, Brewer contends, the defendants' "medical" witnesses have no training to contradict her doctors' diagnoses. Brewer cites Rule 702 of the Federal Rules of Evidence:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Brewer criticizes Continental's failure to accept certain aspects of the diagnoses provided by Brewer's treating physicians as inconsistent with and insufficiently supported by the evidence as a whole showing she was disabled. In light of Continental's alleged conflict of interest, Brewer relies upon *Levinson*, arguing that "the decision to reject the opinions of Brewer's treating physicians constitutes material, probative evidence of a conflict and an abuse of discretion in denying her insurance benefits." *See Levinson* at 1326-27 (11th Cir. 2001)(granting summary judgment for plaintiff when insurance company relied on a nurse's review and the opinion of a claims assessor that plaintiff was asymptomatic and not disabled rather than upon any independent medical evidence or evidence provided by plaintiff's doctors); *Brown* at 1564 (11th Cir. 1990)(noting that the proper deference to a seriously conflicted administrator might be slight to zero.)

### III.   Defendants' Response

According to defendants, plaintiff's only argument for admitting the contested evidence is that it would prove whether a conflict of interest exists sufficient to apply the heightened arbitrary and capricious standard. However, defendants argue, they are not disputing the application of this heightened standard.[9] Therefore, defendants assert, plaintiff's argument is moot.[10]

Under the heightened arbitrary and capricious standard, like the regular arbitrary and capricious standard of review, defendants argue, the court's review is still limited to the Administrative Record. *See Lasser* ("The Court is, however, convinced that the record should not be expanded when employing heightened arbitrary and capricious review . . . . As in

conventional arbitrary and capricious review, the proper focus is on the performance of the administrator and the record should therefore be limited to that which was before the administrator when it made the decision."); *Doyle v. Nationwide Ins. Co. & Affiliates Employee Health Care Plan*, 240 F. Supp. 2d 328 (E.D. Pa. 2003)(in applying heightened arbitrary and capricious standard of review, "the Court looks to the 'record as a whole,' which 'consists of that evidence that was before the administrator when he made the decision being reviewed.'")(citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433 (3rd Cir. 1997))[11]; *Oslowski v. Life Ins. Co. of N. Am.*, 139 F. Supp. 668, 675 (W.D. Pa. 2001)(holding judicial review in heightened arbitrary and capricious case is limited to the evidence in the administrative record); *Sussex Auto Center, Inc. v. Optimum Choice, Inc.*, 2001 WL 822329, *3 at n. 11 (D. Del. 2001)("Under both the 'arbitrary and capricious' and 'heightened arbitrary and capricious' standards of review, 'the [c]ourt is limited to the evidence that was before the administrator when [it] made the decision being reviewed.'"(quoting *Mitchell*); *O'Sullivan v. Metropolitan Life Ins. Co.*, 114 F. Supp. 2d 303, 309 (D.N.J. 2000)(same); *Morris v. Paul Revere Ins. Group*, 986 F. Supp. 872, 882 (D.N.J. 1997)(same).

  Furthermore, defendants contend, plaintiff's arguments regarding Rule 702 and expert witness testimony is irrelevant to the issue before the court, i.e., whether discovery is limited to the facts available to Continental at the time it decided to deny Brewer's disability benefits. Defendants argue that there are no expert witnesses in the case. Even assuming the germaneness of plaintiff's arguments, defendants argue, the United States Supreme Court in *Black & Decker Disability Plan v. Nord* held that no special deference should be afforded to the opinions of treating physicians. *See* 123 S. Ct. 1965, 1969 (2003). The Supreme Court specifically stated: "

Nor does the Act [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." Accordingly, defendants argue, Brewer's arguments about the inconsistency of Continental's disagreement with certain aspects of her treating physicians' diagnoses must fail.

## CONCLUSION OF THE COURT

The issue before this court is the admissibility at trial of testimonial and documentary evidence offered by the plaintiff which allegedly falls outside of the administrative record.[12]

The court concludes as follows:

1. The court will not allow at trial testimony of witnesses (expert or otherwise) not in the administrative record which purports to simply bolster or undermine the factual determination of disability, *vel non*.

2. The court will allow any evidence directed toward the specific issue of whether Continental's decision was tainted by its admitted conflict of interest. This would include, *inter alia*, testimony and exhibits related to any oral communications between Continental's agents and physicians or anyone else related to the claim.[13] Further, any evidence, oral or otherwise, which tends to show that the decision was tainted by the conflict will be admissible, regardless of whether that evidence is in the administrative record, as such.

SO ORDERED.

This \_\_\_17th\_\_\_ day of November, 2003.

                                                                           **ROBERT B. PROPST**
                                                **SENIOR UNITED STATES DISTRICT JUDGE**

[1] These facts are taken from the court's July 31, 2003 memorandum opinion denying the parties' cross-motions for summary judgment.

[2] This is the "Own Occupation" portion of the Plan. After 24 months, the definition of disability changes to what is called the "Any Occupation" definition. Apparently, Brewer's benefits were terminated before the Own Occupation period ended.

[3] The Claim File is attached as Exhibit B to MSJ Defendant's Exhibit 1.

[4] According to defendants, the Continental Policy provides: "When making a benefit determination under the policy, *We* [Continental] have discretionary authority to determine *Your* eligibility for benefits and to interpret the terms and provisions of the policy." Defendants argue that this language "precisely and succinctly establishes Continental's authority to find facts and construe the terms of the plan."

[5] In *Levinson*, the court notes, the Eleventh Circuit affirmed the district court's grant of summary judgment for the employee on the issue of liability. Although the district court apparently reviewed the case under an arbitrary and capricious standard of review, the Eleventh Circuit found that the proper standard in the case was a heightened arbitrary and capricious standard. Then, the Eleventh Circuit stated that a determination of whether a claims decision is arbitrary and capricious requires a determination "'whether there was a reasonable basis for [Reliance's] decision, based upon the facts as known to the administrator at the time the decision was made.'" (citing *Jett*). After examining the evidence before the trial court, the Eleventh Circuit concluded:

> We find that Reliance's decisions on Levinson's claims were wrong from a perspective of *de novo* review, and its self-interest in this case requires that we determine whether the claims decisions were arbitrary and capricious. <u>It does not appear that there was a reasonable basis for Reliance's decisions, based on the evidence known to Reliance at the time it made the decisions</u>. Aside from the report from his law firm indicating that Levinson was a full-time employee, there did not appear to be any evidence before Reliance that contradicted Levinson's evidence from his physician that he was totally disabled under the terms of the plan. Therefore, the district court was correct in holding the claim decision was arbitrary and capricious. (Emphasis added).

[6] However, the court notes, defendants have now apparently conceded that the heightened arbitrary and capricious standard of review applies. *See infra.* p. 12.

[7] The *Medford* case involved a Motion for Stay of Discovery arising in the earliest phase of litigation right after removal from state court. In *Medford*, the court observes, the district court decided to allow discovery on the issue of whether an actual conflict of interest existed, stating:

> When a district court is reviewing a plan administrator's decision for abuse of discretion, the review is strictly limited to the evidence in the record . . . . When looking for evidence of conflict of interest to determine the correct standard of review, the district court is not limited to the administrative record

> before the plan administrator at the time the denial was made. . . . The district
> judge will have to exercise his discretion in determining what, if any, evidence
> outside of the administrative record will be considered in determining the
> correct standard of review and in actually reviewing the decision to terminate
> benefits. This decision and order addresses only the scope of discovery that
> will be allowed, not whether, and if so, what additional evidence outside the
> administrative record is admissible.

*Medford* specifically stated that the court made no findings concerning whether evidence outside of the administrative record would be admissible for any purpose at trial.

[8] *Lasser* involved a motion to clarify the district court's previous order denying cross-motions for summary judgment. In *Lasser*, the court notes, the disagreement between the parties was limited to whether the court could consider (and the parties discover) evidence outside of the record on the substantive merits of the plaintiff's disability. In that case, the parties agreed that the Court could go outside the record "in weighing the existence or extent of the conflict of interest and resulting possibility of bias of the administrator in deciding the claim." The *Lasser* court stated: "As discussed, this factual question must be answered to decide how intrusive the Court's examination of the administrator's decision will be under . . . the heightened arbitrary and capricious sliding scale of review." *Lasser* goes on to point out that if the arbitrary and capricious standard controls, the reviewing court is limited to the record before the plan administrator . . . and that "the record should not be expanded when employing heightened arbitrary and capricious review under *Pinto*." Continental and the Plan also discuss *Lasser, see infra*.

[9] Defendants cite their summary judgment brief: "Defendant concedes the heightened arbitrary and capricious standard of review applies in this case."

[10] The fact that defendants do not dispute the conflict is not determinative of whether the conflict tainted the decision.

[11] The court notes that *Mitchell* appears to have been decided on the basis of an arbitrary and capricious (not heightened arbitrary and capricious) standard of review.

[12] Defendants also generally object to plaintiff's itemization of requested relief.

[13] Such oral communications may be admissible under any theory, because they cannot be proved, as such, by documentary evidence.



&lt;jsd10@bellsouth.net&gt;
11/14/2003 08:50 AM

To: &lt;Robert_Propst@alnd.uscourts.gov&gt;
cc: &lt;mtindal@lgwpc.com&gt;
Subject: Brewer v. COntinental Casualty Co.

Dear Judge Propst,

Pursuant to the request from you office during this morning's conference call, the Plaintiff does not have any dispute with the Facts and Procedural History identified in the Mororandum Opinion. Thank you for your consideration of this matter and we look forward to presenting this case to Your Honor on Monday.

Jeff S. Daniel
LAW OFFICE OF JEFF S. DANIEL
P.O. Box 131323
Birmingham, Alabama 35213
Telephone: (205) 531-1287
Facsimile: (205) 879-8982



&lt;jsd10@bellsouth.net&gt;  
11/14/2003 10:07 AM

To: &lt;Robert_Propst@alnd.uscourts.gov&gt;  
cc:  
Subject: Re: Re: Brewer v. COntinental Casualty Co.

No, Your Honor. Paragraph 2 of the Conclusion appears to clear up the question regarding the allowance of oral testimony from the insurance company's Corporate Representative that we will seek to introduce at trial. Thank you for your consideration of this matter.

```
>
> From: Robert_Propst@alnd.uscourts.gov
> Date: 2003/11/14 Fri AM 09:56:40 EST
> To: <jsd10@bellsouth.net>
> Subject: Re: Brewer v. COntinental Casualty Co.
>
> Any dispute with conclusions?
>
>
>
>
> <jsd10@bellsouth.net>
> 11/14/2003 08:50 AM
>
>
>         To:     <Robert_Propst@alnd.uscourts.gov>
>         cc:     <mtindal@lgwpc.com>
>         Subject:        Brewer v. COntinental Casualty Co.
>
>
> Dear Judge Propst,
>
> Pursuant to the request from you office during this morning's conference
> call, the Plaintiff does not have any dispute with the Facts and
> Procedural History identified in the Mororandum Opinion.  Thank you for
> your consideration of this matter and we look forward to presenting this
> case to Your Honor on Monday.
>
> Jeff S. Daniel
> LAW OFFICE OF JEFF S. DANIEL
> P.O. Box 131323
> Birmingham, Alabama 35213
> Telephone: (205) 531-1287
> Facsimile: (205) 879-8982
>
>
>
>
>
```

Jeff S. Daniel  
LAW OFFICE OF JEFF S. DANIEL  
P.O. Box 131323  
Birmingham, Alabama 35213  
Telephone: (205) 531-1287  
Facsimile: (205) 879-8982



"Mark Tindal"
<mtindal@lgwpc.com>

11/14/2003 10:32 AM

To: <Robert_Propst@alnd.uscourts.gov>
cc: <jsd10@bellsouth.net>
Subject: Brewer v. Continental Casualty Company, et al. (CV-03-PT-0559-M)

Judge Propst,

As to the statement of facts, defendants agree the Court's recitation is accurate.

Regarding the Conclusions of the Court, defendants only wish to address one point (and this may only be a clarification).

The Court ruled that in the event Continental's decision is found to be incorrect, plaintiff is entitled to present evidence outside of the administrative record for purposes of determining whether the conflict of interest tainted the decision. Defendants respectfully maintain that the only decision to be considered by the Court in this case is the final decision on administrative appeal as authored by Donna Gatling after a review of the entire administrative record. *E.g.*, *Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 234 F.3d 541, 544 (11th Cir. 2000) (""It is important to note that where the district court agrees with the **ultimate decision** of the administrator, it will not decide whether a conflict exists.") (emphasis added); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2002) ("The scope of the district court's and this court's review of the denial of benefits is limited to the administrative record available to the plan administrators when the **final decision** was made.") (emphasis added).

When considering whether a conflict of interest tainted the decision, the Court is limited to determining whether the final decision maker's decision (here, Donna Gatling's decision) was tainted by the conflict. *E.g.*, *Yochum*, 234 F.3d at 544 ("It is only when the court disagrees with the [ultimate] decision that it looks for a conflict and, when one is found, reconsiders the decision in light of this conflict.").

Therefore, the evidence on this issue should be limited to whether Ms. Gatling's decision was tainted by the conflict of interest.

Mark E. Tindal
Lloyd, Gray & Whitehead, P.C.
2501 Twentieth Place South, Suite 300
Birmingham, Alabama 35223
Tel: (205) 967-8822
Fax: (205) 967-2380
mtindal@lgwpc.com

ATTORNEY CLIENT COMMUNICATION/ ATTORNEY WORK PRODUCT

This message originates from the law firm of Lloyd, Gray & Whitehead, P.C.

This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this message or its attachments is strictly prohibited. All personal messages express solely the sender's views and not those of Lloyd, Gray & Whitehead, P.C. This message may not be copied or distributed without this disclaimer. If you received this message in error, please reply to the sender above immediately and permanently delete this message.

This electronic transmission contains information from the law firm of Lloyd, Gray, & Whitehead, P.C. that is subject to the attorney-client communication privilege, and/or is privileged as attorney work product.